Case number 20-6245, 6426, 6427, and 6428. USA v. Sylvia Hofstetter, Holly Womack, Cynthia Clemons, and Courtney Newman. Oral argument is not to exceed 40 minutes to be shared by the defendants and 40 minutes for the plaintiff. Mr. Shadd for the appellant. Good morning again. Good morning, your honors. And may it please the court, here this morning representing Holly Womack. And I would like to reserve two of my 10 minutes for rebuttal, if I may. You may, and you may proceed. Thank you. Thank you, your honors. So your honors, Holly Womack was a part-time employee of the East Knoxville Clinic for 11 months. For approximately nine of those 11 months, she couldn't write prescriptions. She did not have a supervisory role at East Knoxville. She wasn't the one that was opening the door. She wasn't the one that was closing up the shop. She was just attending East Knoxville and working there on a part-time basis for a brief period of time. She was charged in two different conspiracies to distribute narcotics. The jury acquitted her on both of those conspiracies. The only count she was convicted in was this aiding and abetting in the maintaining of a drug premises. So given those facts, how could the jury have convicted her of maintaining a drug premises? And I believe that the answer to that lies in the faulty jury instruction that the court gave on that particular count. The court omitted a critical part of what is necessary to prove a 21 U.S.C. Section 856 count when it applies to a healthcare worker. And that is that the narcotics that were distributed were not within the scope of the employment and within the scope of what would be professional conduct for distributing those narcotics. Can I ask you a question, Mr. Shadd? I'm curious. The statute, so 856A1 doesn't have any kind of illegality or unlawful element in it. But A2 does say unlawful, at least somewhere in there. And I'm curious whether the unlawful or illegal, I mean, is that an element of A1? Have we said that's an element? I mean, we've danced around it. Is that an element as far as you're concerned? I think it has to be, Your Honor. And the reason I say that is that if it's not an element, then Walgreens, CVS, Walmart are all guilty of this crime, right? Because if you look at it without the unlawful part, and it's just that you open up a place of business to distribute these drugs, then how is Walgreens not guilty of this offense? I thought there were exemptions in other parts of the statute, though, for people that have licenses or are able to distribute lawfully. Why wouldn't that kind of exclude them from the prosecution then? So the very thing that would exclude Walgreens would exclude Ms. Womack as well. And that is that since she was a nurse practitioner and had a license for approximately two months to distribute, to write those prescriptions, then she would fall under that same exemption. So either you can't parse out 856 A1 and differentiate Womack and Walgreens in any meaningful way without using that same exemption. So that's the problem. And that's why 856 has to have an unlawful part. But more than that, and the government argues in their brief that not only is it not unlawful, but this whole idea of the professional conduct isn't even engrafted into 856 because it's not explicitly drawn into 856 A at all. That's their argument. But again, there's a problem with that in that, number one, we have those exemptions. You look at 21 U.S.C. Section 829, which allows those exemptions for people that can lawfully dispense or provide a prescription for those matters. But more than that, even though it's not physically contained within, there's not language in the element itself, it's got to be in there for purposes of that because of these exemptions that exist elsewhere in the count. And I can think of no better example of that, Your Honors, than how we treat 841 and 846, right? So when it comes to pharmacists and when it comes to doctors and things like that, we engraft into 841 and 846 this duty of care. And that comes from a U.S. Supreme Court case, United States versus Moore, which is a 1975 case, which first came up with this concept of this duty of care. And we don't have, if you read 846, it doesn't say, except, you know, pharmacists have to be outside the scope of their duty of care. It doesn't say any of that within the element. But we all know that that has to be the case because of the exemptions, Judge Nalbandian, that you point out that are contained within the statute themselves. So it's clear that to get a conviction under 856, when it is a health care professional, you have to have these contained within the elements. Mr. Shad, let me just ask you one question as we parse 856A. And you argue that there's no evidence that Ms. Womack maintained the clinics. But what about sufficient evidence to establish that she used the clinics? So maintain and used would cover arguably different activity or different conduct. I would agree with that. And used seems to be a very broad term, right? In other words, if you take used to its logical extreme, the person that comes in after hours and cleans the premises uses it. And so there has to be some limitation on what the term use is. And that limitation comes in kind of to the rest of the elements, which is that they use it for the purpose of, right? It's for the purpose of illegally distributing these narcotics. And so you can't divorce use from in the purpose of otherwise, again, everybody that is an employee that comes within contact with that premises is going to meet the first element of the offense. Let me ask you a question before your time's up. Assume that the illegal part is an element. Why weren't the instructions sufficient here? The verdict form has illegally distributing in it on that count 13. That kind of language comes up in other parts of the court's instructions and talking about the indictment. Why is that not in context enough to satisfy? Well, there's two reasons why that's not enough in this case. One is that we have the fact that the jury in this case acquitted on both conspiracy counts. So we know that the jury found that either no conspiracy existed or that Womack didn't join in on the conspiracy, right? That's what we can glean from the acquittals. But more than that, and more importantly, even though this illegality is contained in other sections of the elements, such as like with counts two and with counts four, you know, this court has always said that we assume that the jury follows the jury instructions. And in this case, the judge was very specific. If you look like, for instance, it is on page 61764, the court actually says, and I see my time is up. Can I finish my answer? Just take a few seconds, please. Yes, thank you. So the judge actually says these relate to these two counts. These following instructions relate to these two counts. And the judge is very specific on these only relate to these two counts. So you have the fact that this illegality is engrafted into all of the other counts of conviction, except for 856. And so if the jury is following the instructions, the jury is looking at it and saying, obviously it's not required under 856 because the judge omitted it from 856. And therefore, that's where the jury lost their way. My time is up. I don't know if the court has any further questions. Thank you. Not at this time. You'll have your rebuttal. Thank you. Mr. Reagan, are you up next? Yes, you're on. Okay, thank you. Yes, sir. I'm Randall Reagan, representing Cynthia Clemons in this cause. Ms. Clemons is an advanced nurse practitioner, licensed and registered with the DEA. To prescribe controlled substances. And that is what she was doing in this case. She was prescribing controlled substances in the course and scope of professional practice and for legitimate medical purpose. None of the evidence in this case shows that she did anything other than that. With regard to the sufficiency of the evidence, one of the witnesses that the government put on was Crystal Parks Morgan. Ms. Morgan worked at the clinics from 2012 until they were closed in 2015 when the search warrant was executed on clinics. She testified that she saw nothing that she thought was illegal at the clinic. And she thought Cynthia Clemons was a good provider. Another note of significance here is that Crystal Parks Morgan, despite the length of time she worked at the clinics, she was not charged in this case. And again, there's Ms. Puckett, who was the site manager for the Lovell Road Clinic. She is the one who was along with the other lady who had this scheme of their own going on where they were accepting bribes from sponsored patients and doing various things to hide from the providers the fact that they were changing drug streams, they were hiding drug streams, they were destroying records. And they admit in their testimony that they were doing everything they could to keep the providers from knowing about their scheme. And even Puckett acknowledged in her testimony that there were a great number of legitimate pain patients at this clinic. There was another, Clyde Tipton, who was one of the owners of these clinics. He testified that when he set the clinics up up here, he set them up to be in compliance with law, did everything he could to make sure that they were following the Tennessee laws regarding registration, regarding inspections, regarding how they were paid to be in compliance with law. He also said that he didn't have any contact with the providers. He added nothing to the pot about what their course of action was or what their state of mind was in this case. Um, with regard to the to the jury instruction, um, the court in this, and this is at record number 897 page number 61800201. In his instructions to the jury, he instructed them on two elements only in this in 856. And that was that the defendant knowingly opened used or maintained the place for the permanently or temporarily and the second that the defendant did so for the purpose of distributing any controlled substances. Well, that's the purpose of the pain management clinic is to distribute controlled substances. That's the only two elements he instructed the jury on in that case. The government compounded this error in their argument. They argued specifically that there are only two elements to 856, and they repeated these two elements. The I think it's what a significant is in 856. It starts out with the language, except as authorized by this title. It should be unlawful to knowingly open, use, maintain, et cetera, the premises for the use of distributing, distributing or using any controlled substance. That means it has additional elements. Am I wrong? Am I wrong that on the verdict form on the actual verdict form for count 13, it does say for purpose of illegally distributing. Is that right where they check guilty? I mean, isn't that on the verdict form itself? I don't I don't recall a judge to be honest. I don't recall. OK, I mean, that would track the indictment. The indictment says illegally also, doesn't it? I don't recall whether it has that language in there, but without outside the course of professional practice. OK, that's not the scope of professional practice without legitimate medical purpose. And I think it's significant to note that in all the other counts that Miss Clemens was charged in, the judge instructed the jury. All those other counts contain the language that it had to be outside the professional course of practice and without a legitimate medical purpose. Every other count except the 856 count, the jury was instructed in that way. She was acquitted of every count in which that language was included. So I think it's significant to note that. And we cite a case and I want to I want to say one thing here. We cite U.S. v. Allaire, and that's at page 40 of our initial brief. And that has an incorrect citation to that case. It should be 430 Fed Third and the page number should be 681. And the pinpoint site is 689. And I apologize to the court for that. I had no idea how that happened. We usually cut those out of Lexis and paste them in there. Lexis puts in the citation, but that was that's an incorrect citation. The correct citation is 430 Fed Third 681, 689. But at any rate, Allaire says that there is an enhanced analysis that applies to licensed providers when we're looking at 856. And that is because these providers are. Are licensed with the DEA. It says an enhanced analysis applies, however, to persons who are properly registered with the DEA pursuant to USC 821, USC 822. Such persons are authorized to distribute controlled substances. And the jury was not instructed as to that aspect of it in that instruction. And again, as compounded, the government capitalized upon this error in their argument. They specifically argued that there were only two elements. That's all you had to consider. So I know my time is about up, so I don't know if the court has any questions. OK, well, thank you, Mr. Reagan. You'll have your rebuttal. Thank you, Mr. Oldham. Yes, Your Honor. Thank you very much, Your Honor. This is Christopher Oldham of the Knoxville, Tennessee Bar on behalf of the appellant, Courtney Newman. Your Honor, I had a nice argument laid out and I was going to go through it in order, but the court has expressed an interest in this jury instruction. And I think what I'm going to do is just jump to that and talk about that for just a second. Mr. Reagan brings up a good point that I don't think is stressed enough is that the government's taken the position that the statute is accurately reflected in the jury instruction, but the court instructed the jury and the government followed up on that. The court said that the jury only had to find two things in order to convict. And each of these things are perfectly legal without some sort of underlying unlawful act. For example, as Mr. Shadd pointed out, opening and maintaining a place. There are tons of people that do that. Pharmacies do that. Doctors' offices do that. And for the purpose of distributing any controlled substance, once again, pharmacies, doctors' offices, they do that on a daily basis and they don't, they seemingly don't run afoul of the law. And the reason we know that there has to be an unlawful act attached to it is just look at the start of the statute when it says, subsection A, unlawful acts except as authorized by this subchapter, it shall be unlawful to. So what do we do to determine whether something's lawful or not? Well, we look back at the subchapters in the statute that this references. And I think the best place to go is to go into the definition section in section 802. And it tells us essentially what all of these items are and whether they're lawful or not, and then what makes them lawful. And one that really jumped out on to me is that it only criminalizes three things or makes unlawful three things if they're coupled with an unlawful act. Manufacturing, distributing, or using. There's a term manufacture in here that's defined rather carefully. I'm presuming because use is not defined, it's talking about because this is the crack house statute, it's people going into a crack house and using the narcotics, using heroin, using crack, using methamphetamine or whatever. But distribute is also a fairly well-defined term. And it's in section 802.11. The term distribute means to deliver other than by administering or dispensing a controlled substance. So what it does is it breaks out dispensing. And that's what these practitioners were doing. They were dispensing by use of a prescription. And how do we know that? Because it defines that in the prior section. The term dispense means to deliver a controlled substance to an ultimate user by prescribing or administering the controlled substance. And it only makes it unlawful if it's done essentially outside, if it's done pursuant to a lawful prescription, essentially one written after an examination or something. Let me ask you this question and I'm a little bit, I'm sympathetic to these arguments, I suppose. It's interesting that broadly read, the statute would seem to cover some legitimate businesses, let me say. And maybe the argument here, obviously, is that this was a legitimate pain clinic. But isn't it incumbent upon the defendant at some point to request more from the instructions? In other words, if there's a license issue or you have a license or whatever it is. I mean, my understanding on this jury instruction error is that we're reviewing it for plain error, is that right? In other words, there was no attempt by the defendants to proffer some instruction that would have taken care of this issue. I mean, putting aside the context where I think it may be correct anyway, regardless of whether it's an element. But isn't it incumbent upon the defendant here to kind of proffer the right instruction? There's no question there was little discussion about this. There were two other charges, which quite frankly, and I'll be honest about it, I consider to be much more risky for this particular defendant. And I'll be the first to admit that this one was a charge that I consider, I did not consider in the life that I consider the distribution charge and the conspiracy charge, which was coupled with death enhancements. My client was looking at a potential life sentence. And the instructions were, I'll grant you the discussions were focused on that. And the discussions were not focused on this particular account. And yes, it probably should have been incumbent. And that's probably what we're talking about. But my position is that it is plain error because it omits an essential element, which is that there has to be an underlying bad act. The court talks about, well, the term illegally is thrown about in there. But it's a very specific type of illegality that we're talking about. The illegality is that the prescription has to be outside the scope of professional practice without legitimate medical purpose. I was racking my brain last night in anticipation of this question. I cannot think of a single other jury instruction where we would allow just a generic term illegal to be given to the jury and allow the jury to act on it. We define literally every single crime. We tell them what the elements of each crime are, even murder, something that everybody thinks that they know. Can I ask you this question? Where does that, what's the origin of that kind of outside of professional practice language? Is that from a court case or where is that? It's, if my recollection is correct, it stems from some DEA guidance. It's not a law. I think it stems from some DEA guidance and then it sort of worked its way into the trial system, I guess it would be. Is there a model instruction that was used or is followed in this? The Sixth Circuit does not have a model instruction. I believe this is the Ninth Circuit model instruction, but the one thing I do want to stress is that the 856A1, it's the crack house statute. So I think when it was crafted initially that everybody believed that we're talking about crack houses where there is no legal or lawful activity that goes on in these crack houses. And that's the legislative history. It's very, very clear that this was enacted to combat crack houses and not, it wasn't intended to go after rogue doctors initially. And my time is up and I'll be happy to answer any other question, Your Honor. Okay. Thank you, Ms. Oldham. Ms. Cravens? Yes. Good morning, Your Honors. My name is Loretta Cravens of the Knoxville Bar. I was co-counsel for Appellant Sylvia Hofstadter at trial. I would like to reserve three minutes of my time for rebuttal. And as an initial matter, as to the extent that this jury instruction issue also pertains to Ms. Hofstadter and was among the 12 issues I believe that we raised in her brief, I would adopt the arguments of my co-counsel here and should the court have any specific questions as to how that jury instruction relates to Ms. Hofstadter, I would like to entertain those first before moving on to some other issues. You can proceed. All right. As I said, I did raise 12 issues on behalf of Sylvia Hofstadter, who was a regional manager for the group colloquially referred to as the Italians in our briefing and at trial. A group of other owners of these clinics originating out of Florida. Ms. Hofstadter came to Tennessee after a decision was made to open some clinics here and after another employee was initially chosen to come to our city to open these clinics, but then did not and Ms. Hofstadter was sent in her place. Because there are so many issues raised on behalf of Ms. Hofstadter, I want to just try to direct the court to Thor that I'll give short shrift to here today as well. But first of all, the issue regarding prosecutorial misconduct. During the closing argument, as we've alleged in our brief, the prosecution made a number of statements that had the impact of, from our perspective, of implying that there was duty owed by the defendants to prove something, to explain something, or to present particular evidence, which as we know, burden shifting is prohibited. And to address those specific comments, the first comment was during closing argument, the prosecution referencing the emotional reactions of a couple of short-term employees that had testified during the trial, used the phrase guilt you've never heard of from these defendants. This we interpret as a comment on the defendant's failure to testify. The defendants were not heard from. The only way they could be heard from in front of the jury was if, in fact, they did testify. Ms. Hofstadter did not testify. Neither did either of the three co-defendants. Secondly, the objection that was stated in front of the jury that a witness had been subpoenaed but not called by the defense. This is the implication that we failed to present a witness that would have been available to us and likewise implies that there was a duty to call that person because she was subpoenaed. And the third statement at issue is the implication that the defense should have called fact witnesses. In fact, the government commented on our failure to call fact witnesses in its statement that the government was the only party to present fact witnesses. This, as is briefed, was subjected to the Robinson test. We suggest that the failure to call fact witnesses statement was not a comment on our failure to rebut, as noted by the government, but an implication of a duty to present that testimony. And it's more significant in the context of the government's theory throughout trial was that Ms. Hostetter was a bad person. Yes, Your Honor. So the government, they're allowed to point out that a defendant hasn't rebutted evidence, aren't they? Or are they not? No, I think that's correct, Your Honor. And had the prosecution said the defendant failed to rebut this evidence, I think that would have been a slightly different statement instead of saying they didn't call witnesses. So I see a distinction between commenting on failure to rebut and failure to call fact witnesses. And I recognize that's a fine distinction. This is compounded in this particular case, in my opinion, by the fact that objections have been raised to the prior statements. The government was on notice that the defense was taking the position that these statements were, in fact, comment and amounted to burden shifting and then continued to make such statements throughout its closing argument. Does that answer your question, Your Honor? Yeah. Thank you. Since I'm running out of time, I also just want to direct the court to three other issues that I think are particularly important to Ms. Hofstadter. And that is the issue of the admission of evidence of uncharged thefts at the Hollywood Clinic. The government, in its brief, asserts that this was intrinsic to the conspiracy, and that defendant Hofstadter did not dispute that it was intrinsic. And while I'll concede that I did not use the word intrinsic in the briefing or perhaps the argument at the trial court, we certainly do dispute that those uncharged thefts were, we do dispute that they were intrinsic to the conspiracy and necessary for proof. I'd also take my last minute to ask the court to particularly look at the issues of spoliation and the possibly inconsistent verdict or the inconsistent verdict in Count 14 of the indictment for which Ms. Hofstadter received 160 months consecutive to her sentence on the remaining counts that she was convicted of for a total effective sentence of 400 months. The spoliation issue, the point I will touch on in my remaining time, is to understand the timeline that those charts were seized in Florida in the Hollywood Clinic in 2010, requested by DEA in Eastern District of Tennessee in 2015. And the government asserts that as a result of miscommunication, those files just didn't get transferred. This agent in Tennessee did not get responded to. However, I would suggest that if that were the case, the government should bear the consequences of its miscommunication between its DEA offices for the destruction of those files. The government also asserts that there's comparable files charts available, and I would simply suggest that there is no way to know that there are in fact or were in fact comparable files available. And that's my time. Okay. Thank you, Ms. Cravens. Next, we'll hear from the government, I guess. Mr. Samuelson. Thank you, Your Honor. May it please the court, my name is Brian Samuelson, and I represent the United States. The trial, the jury instructions, and the jury's verdict in this case were all fundamentally sound. Of course, I'm happy to answer questions on any of the issues in this case. I'd like to focus on a couple that are common to all the defendants, the drug premises jury instruction and the consistency of the verdicts. Starting with the drug premises instruction, those instructions were not erroneous. They were certainly not plainly erroneous, and they did not affect the defendant's substantial rights because taken as a whole, they were clear that the purpose of the drug premises must be the illegal distribution of drugs. Now, I think... Is that an element of an 856A1 crime, illegality? Yes and no, Your Honor. Yes, it is a requirement that the government must prove that the purpose of the place was to distribute drugs illegally. No, it is not an element. Why do you have to prove it then? I'm confused. Is it in the text of the statute? No, it is not in the text of the statute, Your Honor. The statute says that it is unlawful to maintain a place for the distribution of controlled substances. There is this phrase, except as otherwise authorized by the statute. I think in this context where we have a clinic purporting to write prescriptions, that the government had to prove that the purpose of the place was the illegal distribution of controlled substances. It is not an element of that offense. It is not listed as an element of that offense in Cheney or Sadler or the pill mill cases that this court has analyzed. So what's the response then that CVS and Walgreens are violating the statute every day? Well, Your Honor, that's why I think it's a requirement that the government prove that the purpose of the place was the illegal distribution of controlled substances. That is something that the jury instructions listed as a requirement. Taken in context to the entire jury instructions, I don't think the jury instructions could have left any doubt that it is not illegal to operate a CVS or a Walgreens for the purpose of lawfully prescribing medications. My only point was that it is not a specific element as listed in the statute. The jury instructions did not call it out as a specific element, and that was not error because it has not been listed as an element in the statute, in this court's cases. I'm a little bit confused because, I mean, if you call it, let's say it's not an element, but you have to prove it. So I'm not sure what that means. I mean, I'm not sure what to call that. But hang on. So the jury instruction, it seems to me, would be very important that you point out that you have to prove this. In other words, if you just say there are two elements in this statute and you list the two elements, but you leave out the thing that you're saying you have to prove also, why isn't that the same kind of error as if it were an element that was left out? Two points, Your Honor. I think this is akin to an affirmative defense that the government has to disprove rather than an element, and that means that it's entitled to a jury instruction if anybody asks for it. Now here, regardless of whether it's an element, the jury instructions taken as a whole make it very clear that the purpose of the place must have been the illegal distribution of controlled substances. Let's look at what the jury instructions actually say. The jury instructions twice instructed that the defendants had been charged with maintaining a place for the purpose of illegally distributing controlled substances. That includes one time immediately before listing the technical elements of the offense. But that's not all. The jury instructions also repeatedly told the jury that licensed practitioners may legally prescribe medications in the course of professional practice. That includes one instance, for example, that says that registered practitioners are exempt from criminal liability if they distribute controlled substances for a legitimate medical purpose. I don't think that instruction, I don't think the jury could be confused that juries, that licensed practitioners may provide prescriptions under a lawful, in the lawful course of their business. What about, what about the statements from the prosecution that they had to prove two elements? Well, your honor, the closing argument further reinforces that everybody in the courtroom knew that the prescriptions must have been distributed illegally, or the purpose of the place must have been distribute prescriptions illegally. The government said in this closing argument that the big question in this file was did defendants, quote, betray their oaths and become de facto drug dealers? So the theme of the government's case, in other words, was that these were clinics that were operating outside the course of professional practice and that were not writing legitimate prescriptions. As to count 13, the drug maintenance count, the government told the jury to convict if the clinics were, quote, pill mills, which it described as a drug house where narcotics are exchanged for cash. So I think even as specific to this count, the government's argument was that these clinics were being maintained as places for the distribution of illegal controlled substances, the illegal distribution of of narcotics. And that all takes place in the larger context of the case. The jury instructions have to be evaluated in the way the case was was litigated. Right, let me ask you, Mr. Samuelson, I'm sorry, go ahead. I agree with that, but I'm wondering why part of the broader context is the inconsistent jury verdict, too, isn't it? I mean, I understand that inconsistent verdicts, the Supreme Court's been very specific about whether we can review them and how. But in this particular case, it just seems odd that if the theme of the case was basically you're illegally distributing drugs, but they're acquitted of that and then they're arguably not OK. I mean, why doesn't that factor in and make this slightly different than the normal inconsistent verdict case? Two points, Your Honor. One, I think inconsistent verdicts might be evidence of an erroneous of prejudice of an erroneous jury instruction if there was any error in the jury instruction in the first place. And I think in the context of this jury instruction in this trial, there was no error. But second, the verdicts aren't inconsistent in, well, as to the nurse practitioner, the verdicts are not inconsistent at all. Yes, the nurse practitioner defendants were acquitted of a drug conspiracy, but drug conspiracy has an additional element, namely an agreement that maintaining a drug premises does not. So there's nothing inconsistent about acquitting those practitioners of conspiracy and finding them guilty of maintaining a drug premises. The same with their acquittals on. I'm sorry, Your Honor. Yeah, just one quick question. Ms. Womack argues that there are these two recent Supreme Court cases, Rehab v. United States and Ms. Messlin-Yak v. United States. And they hold that jury instructions may be insufficient, even when they track the language of the statute. And so the argument here is that even though the instructions may, to some extent, track the language of the statute, they would be maybe, I guess, arguably, plainly erroneous. Any response? Yes, Your Honor, the jury instructions were proper here, not just because they track the language of the statute, although they did. They are proper here because they clearly convey the requirement that the purpose of the place must be the illegal distribution of controlled substances. That is in the specific instructions that the jury is given. The jury was repeatedly told that the defendants were being charged with maintaining a place for the purpose of illegally distributing controlled substances. And it's in, it appears many other times in the jury instructions where the jury is told that medical providers may lawfully prescribe medication and that doing so lawfully is a defense to criminal liability. The, in the larger context of the case, we can also tell that the jury instructions are not erroneous because of the finding in the verdict form. The defendant, the verdict form, the jury found the defendants guilty of maintaining a business, quote, for the purpose of illegally distributing controlled substances. And that, regardless of any technical error in the jury instructions, the jury made a finding that the purpose of the place was the illegal distribution of controlled substances. So, I think that is conclusive proof that there was no prejudice that flew, flowed from any technical error in the jury instructions. What about the argument, though, and I think it was Mr. Oldham that said, but using the word illegal wouldn't really be enough in this context. I mean, it's really about, it's just that word is not meaningful here. It's got to be more specific. Well, Your Honor, I disagree because the jury received detailed instructions about what a lawful prescription was. I'm looking on page 61810 of the jury instructions and the court gives a lengthy explanation of what, of how controlled substances must be prescribed under federal law in order for such prescriptions to be legal. So, the jury was given guidance about what it means for prescriptions to be legal and what it means for them to be distributed illegally. And in this case, we have a finding that the purpose of the place was the illegal distribution of controlled substances. The jury instructions also have to be evaluated not just in context of the specific jury instructions or even the verdict form, but also the indictment. I mean, it was clear from the start of the trial to the finish, from the indictment through the verdict form, that the purpose of these place was the unlawful distribution of controlled substances. I want to get back to the consistency of the verdicts, which Your Honor asked about. As to the nurse practitioner defendants, the verdict was not inconsistent at all, because the drug conspiracy charge and the substantive drug counts have specific elements that are not part of maintaining a drug premises. As... maintaining a pill mill, whatever, without having explicitly agreed to do it? I mean, is that what would happen? Jury could have thought they were just kind of all of them were operating on their own without an explicit agreement, but that would fall under the 856-A1? Yes, Your Honor, particularly because the defendants were charged with aiding and abetting the maintenance of a drug premises. And aiding and abetting, the Supreme Court has been quite clear, does not require an agreement. It is a different crime from conspiracy with a different element, specifically the agreement. I think it's also important to remember that an acquittal is not a finding of anything. Yes, the defendants were acquitted of conspiracy, and yes, Ms. Newman was acquitted of the with regards to Hofstadter, even though she was convicted on the same account. But an acquittal is not a finding of anything. All it means is that this jury decided to find these defendants not guilty on those counts. It is not a finding of innocence, and it's not even a finding that the government didn't prove the elements necessary to sustain those convictions. Because the Supreme Court has been clear that the jury is free to quit for leniency, for So the fact that we have some acquittals in this case is not evidence that there was anything improper about the jury instructions or that the counts on which the defendants were convicted are improper in any way. The defendants can't argue that their convictions are improper without also arguing that the acquittals were proper. And that's exactly what the Supreme Court says this court may not do. Which is the one the jury really meant or which is proper. There was sufficient evidence to convict the defendants of the charges on which they were convicted, and they have no cause to complain that there were also acquittals. Your Honor, one last point I'd like to turn to is a point Mr. Shadmay referring to the evidence as to the maintenance of the drug premises charge. There were three ways that the nurse practitioner defendants could have violated the maintaining a drug premises statute. They could have used the premises for the purpose of distributing illegal drugs. They could have maintained the premises themselves. And they could have aided and abetted Hofstadter in maintaining the premises. In all three of those, I believe that there are sufficient evidence to sustain the jury's verdict in this case. Probably the most straightforward and the most logical one is that the defendants, the nurse practitioner defendants, use the premises for the purpose of distributing controlled substances. Now, unlike the cleaning person who comes in after hours and sweeps up and uses the premises in some way, the key here is that the nurse practitioner defendants use the premise for the purpose of distributing controlled substances. And that's what narrows the statute. So we have that requirement that the use must be for the purpose of distributing controlled substances. And the evidence in this case supported that finding here. The government presented evidence that the prescriptions that were written were outside the course of professional practice, had no legitimate medical purpose, that every one of them was outside the course of professional practice. And so a jury could conclude, based on that evidence alone, that these defendants were using the premises to distribute drugs illegally. And that's enough to sustain that conviction. I mean, it just becomes like a big kind of as applied. I mean, it seems like there's a lot of leeway in the statute. I mean, the word use is very broad. You have to add this for the purpose of, which isn't in the statute. It seems really odd to me that we would. I mean, I don't know that it's vague, because it has to be as applied vague and as applied in this case, it probably isn't. But that just seems odd that in every single case, we'd have the same argument without the elements being actually defined anywhere. Your Honor, I agree that it is a very broad statute. I also agree that it is not vague, specifically as applied in this case. And just two points. There are a couple of limiters in the text of the statute itself. One, that the conduct must be knowingly. The defendant must knowingly use the premises. Second, the defendant must knowingly use the premise for the purpose of manufacturing, distributing, or using any controlled substance. So the for the purpose language is in the statute itself. Now, you're right that the exception is found outside the statute. An exception for lawful prescriptions, essentially, is found outside the statute. I think that's why it's best characterized as an affirmative defense that defendants must raise before the government must disprove, must prove that those prescriptions were not for a legitimate medical purpose. When would they do that mechanically? So let's say you indicted CVS for something that they say was perfectly legal. Would they raise that in a motion to dismiss the indictment? Would they raise it at trial in a motion in limine? If the motion is approved, whatever, or do they have to actually go through trial and get an instruction that kind of shifts the burden or whatever? Your Honor, I'm not sure. I think it's plausible that they could raise that in a motion to dismiss. That issue didn't come up here because from the jump, the indictment said that charged the defendants with maintaining a drug premises for the purpose of distributing controlled substances outside the scope of professional practice. So that was in this case from the indictment. Certainly here, I think if the defendants had requested a more specific jury instruction on outside the scope of professional practice as to this count, they may have been entitled to one. I think that's sort of where it would pop up here. And that's why this issue is being reviewed for plain error. But certainly in this case, from the indictment to the verdict, this was a consistent presence in this case. Your Honor, I know there are several other issues in this case. I'm happy to answer questions on any of them. Barring further questions, the government would rest on its brief and I urge you to affirm. Okay. Well, thank you, Mr. Samuelson. We will have rebuttal now. Mr. Shatt. Thank you, Your Honors. First, I would respectfully disagree with opposing counsel that this is not an element that's attached to this offense. And my main citation for that is the case that I cited to before, which is United States versus Moore. That's the Supreme Court case from 1975. And I think that's and that also answers Judge Nalbandi and your question as to where did this outside the scope of medical practice come from? Because in that case, it was a physician that was charged under 841. And the physician said, look, you can't even convict me under 841 because I've got a license to distribute these drugs. And that's where the Supreme Court came up with this analysis of outside the scope of medical practice that has since been engrafted into 841 and 846 cases. So that flows through to an 856 case because it's the same subchapter of Title 21. And that's and that's what I think rules the day in terms of why this is an element when you're dealing with a health care profession. OK, but what about this idea that maybe it's more of an affirmative defense that the defense has to raise and say, oh, wait a minute, we've got a legitimate license here. And so we can't be convicted. Your Honor, it can't. It's not an affirmative defense in that because there's a license, there's already a there's already permission under the federal statute to dispense. And because there's already permission to dispense, it's up to the government to prove that it was outside the scope of that license. And that and that's true. Again, the cases that opposing counsel cited to Cheney, especially Cheney was a a physician case. And then Cheney under the 841 counts, that's exactly what they were required to prove was that it was outside the scope. And there's a case that I don't cite to my in my brief, but it's Volkman, which is kind of the quintessential case on this topic that says it's got to be more than just distributing. It's got to be outside the scope of medical practice and cites back to the Supreme Court more case. I see that my time is up. Unless there are any further questions, we would ask that you reverse on the 856 count. Okay. Thank you, Mr. Chet. Mr. Reagan. You're on mute. You're on mute. Thank you, Judge. Sure. Yes, Judge Delbandia, with regard to your question about the verdict form, it in counts 11 and 13, the two that Ms. Clemons was convicted of the 856 violations, those two for the verdict form does say that was for the purpose of illegally distributing schedule to control substances. In those two counts, that's all the language there is about illegally. In the other counts, counts two and four, the conspiracy counts and count 16 and 18, which were the substantive counts. Each of those counts in the verdict form contains the language outside this course of professional practice and without a legitimate medical purpose. Again, the counts that that language was contained in, Ms. Clemons was acquitted of those counts. The two counts that that language was not included in, it contains only the word legally, that's in counts 11 and 13. She was convicted of those two counts. And that feeds back into the flawed jury instruction in this case, that that verdict form repeats the same problem that was there in the instructions. Um, the other issue that I wanted to talk about was the, um, the government talks about this instruction, track the language of the statute on 856. Well, it did not track the language of the statute because it did not include the language except as authorized by this time. That language was not included in there. Um, and as far as it being an affirmative defense charge, please, again, that that is what these, uh, providers were charged with was acting outside the scope of professional practice without a legitimate medical purpose. If they weren't licensed providers, the government wouldn't have to prove that. But how would it work if it had the except language in it? It couldn't just have except the except language in there. That would just leave. That would beg the question, right? It would have to have more than that. As authorized by the subchapter, meaning blank, right? Well, it would have to, if the court had included the language regarding the professional practice, professional practice and legitimate medical purpose, that would have taken care of it. You would not have had to refer back to the statute because you're putting that, um, that that covers, I think, the except as authorized language. If you put that language in there about the scope of professional practice, the legitimate medical purpose, that would have taken care of what is except as authorized. And that was not done. I see my time is up. Thank you. Thank you. Thank you, Mr. Reagan. Mr. Oldham. Yes, Your Honor. Just briefly, I'd like to return to the point I was concluding on. You followed up with the government is the concept of the generic term illegal as used in the jury instruction. As noted by Mr. Scheid, in none of the other counts was just the generic term illegal used. There was a very specific guideline that the jury was forced to consider the counts under, which was the outside the scope of professional practice without legitimate medical purpose. And following that instruction, of course, the jury acquitted Ms. Newman and the other providers. The flaw in the using the term illegal is that it gives license to the jury to substitute their own version or their own interpretation of the illegal as opposed to the actual conduct. And as I was saying before, I can't think of another statute or another jury instruction where we would just simply say that this person illegally did X, illegally murdered, illegally raped, illegally did these things. We have very, very detailed instructions in almost any crime that in my 30 years of trial practice, there's always here's what constitutes a first degree murder. And it's ABC and you walk the jury down the line. Here's what you have to find. In this particular case, we did that with the conspiracy count. And we did that with the substantive count. But with the maintaining a premises count, we just threw it open to the jury and said, did they illegally do this? That allows the jury to just insert whatever conduct they consider to be illegally. I mean, we know we're not immune to the outside world. And we know that that's sort of eaten up this area. And they could just simply believe that just distributing opioids is a bad thing and should be illegal and could have used that as the basis. But we didn't provide the jury with the guideline that we gave them in other instructions that said, in order to reach the conclusion of guilt or innocence or not guilty in this particular instance, you have to determine that the drugs distributed were outside the scope of professional practice, one, and two, without a legitimate medical purpose. We didn't do that in the jury instruction. And even if you say, well, the jury verdict form says that they illegally distributed, that still doesn't answer the question of whether or not they violated the statute, which requires a finding that they distributed outside the scope of professional practice and without legitimate medical purpose. We just gave it over to the jury. That instruction just gives it over to the jury, their interpretation of a law without providing them with the guidance that we gave them in others. We can't assume that they knew to transport those definitions from one count to another. That would be ludicrous to think that we could just assume that the jury is smart enough to do these things. We don't assume it in any other case. And I see my time's up. Thank you, Your Honors. Okay. Thank you, Counsel. Ms. Cravens? Yes, Your Honor. Thank you. As far as rebuttal, I believe I'm only going to touch on one quick point with regard to follow up on what Mr. Olin was saying. I think the term illegally is also particularly concerning in the context of this case as a broad concept being given to the jury in the context of this jury instruction for a number of reasons. This case was rife with evidence being introduced to a trial of illegal conduct associated with this clinic that would have been completely unbeknownst. And the fact there was testimony was hidden from Ms. Hofstetter specifically, and which would not relate to these other providers. Specifically, the Puckett-Hill scheme referenced by Mr. Reagan, there was testimony by multiple witnesses at trial that that was, in fact, hidden, admittedly illegal conduct occurring inside this clinic, but that was hidden from Ms. Hofstetter. So, I think in the context of hearing that the jury had heard evidence of other and unrelated illegality other than that it was associated with these clinics, not these particular defendants, it further muddies the water of what they might have interpreted illegally to me, where this particular instruction omitted the language that was included in the others. And that's all the only distinction I would add. Okay, well, thank you, counsel, for your arguments this morning. We really do appreciate them. And I'd like to take this opportunity to thank three of you who have taken on this representation pursuant to the Criminal Justice Act. And that's, as I understand it, Mr. Reagan, Mr. Oldham, and Ms. Cravens, that willingness to take on this case under the CJA Act is quite a service to system at large, certainly to your clients. We very much appreciate you, your efforts and your briefing and your oral argument today. It's a real service again to our justice system and to your clients. Thank you. And Mr. Shea, not to leave you out, as a federal defender, we thank you very much. We see you quite regularly in our arguments. And thank you again for your briefing and arguments. So with that, the case will be submitted. As I noted at the outset, Judge Seiler will listen to the argument recording and we will a member of this panel for decision purposes. So with that, the case is submitted.